May Term, **1822.**

STRONG v. THE STATE.

---

STRONG v. THE STATE:

An indictment for perjury alleged that the offence was committed on the trial of an issue between *A.* and *B.*, in a suit by the former against the latter. The record of a cause commenced by *A.* against *B.* and *C.* was offered in evidence, in which cause *C.* was returned "no inhabitant," and an issue was joined and tried between *A.* and *B.*—*Held*, that there was no material variance between the proof and the allegation.

A statement in the record,—that on, &c., by the oath, &c., it *was* presented as follows, &c., (copying the indictment,)—is not objectionable for being in the past tense.

A person guilty of perjury, when the punishment was whipping not exceeding 100 stripes, was prosecuted and convicted after the taking effect of a statute, by which the punishment for subsequent convictions of the crime was changed to confinement in the penitentiary, not exceeding 7 years: *Held*, that the conclusion of the indictment in the singular, *contra formam statuti*, was sufficient; that the statute making this change in the punishment was not *ex post facto*, according to the meaning of these words in the constitution; and that a sentence of the offender to the penitentiary, under these circumstances, was not erroneous.

The provision in the constitution, that no *ex post facto* law shall be made, means, that the legislature shall not pass any law, after a fact done by a citizen, which shall have relation to that fact, so as to punish that which was innocent when done; or to add to the punishment of that which was criminal; or to increase the malignity of a crime; or to alter the rules of evidence so as to make conviction more easy.

ERROR to the *Fayette* Circuit Court.—This was an indictment for perjury against the plaintiff in error; in which the offence was charged to have been committed on the trial of an issue joined between *J. Campbell* and *N. Strong*, the former being plaintiff and the latter defendant. At the trial of the indictment, the record of a cause in which the prisoner had been sworn as a witness, was offered in evidence: the suit was commenced by *J. Campbell* against *N. Strong* and *L. Sison*, and the sheriff returned that *Sison* was "not an inhabitant of the county;" *Strong* appeared and pleaded payment, and *Campbell* joined issue; the jury were sworn to try this issue between *Campbell* and

*Wednesday, May 22.*

25

*Strong.* The record was objected to on the ground of variance, but the objection was overruled and the evidence admitted. The offence was proved to have been committed in *July*, 1821, when the punishment for perjury, by statute, was whipping not exceeding 100 stripes. The statute for the erecting of a penitentiary, approved *January* the 9th, 1821, enacts, that persons convicted, after a proclamation by the governor that the prison was completed, of any offence punishable by stripes not exceeding 100, shall be sentenced to the penitentiary for any term not exceeding 7 years. The proclamation of the governor was published on the 2d of *October*, 1821; the indictment was found at the *October* term, which commenced on the 15th of *October*, 1821; and the trial took place at the *March* term, 1822. The record stated that on, &c., by the oath, &c., it *was presented* as follows, &c., (copying the indictment;) and the conclusion of the indictment was in the singular, *contra formam statuti.* The jury found the prisoner guilty; that he should pay a fine of one dollar, with costs; and be confined in the penitentiary to hard labour a year and a day. Motions for a new trial, and in arrest of judgment, were made and overruled; and judgment was rendered upon the verdict.

SCOTT, J.—The first error alleged is, that there is a variance between the case set out in the indictment, in the trial of which the perjury is charged to have been committed, and that, the record of which was offered in evidence. This objection does not appear to be supported by the record. The perjury is charged to have been committed in the trial of a certain issue joined between one *J. Campbell* and one *N. Strong*, in a certain plea of debt in which the said *Campbell* was plaintiff and the said *Strong* was defendant; and the record produced in evidence shows a case in which *Campbell* declared against *N. Strong* and *L. Sison.* The sheriff returned that *Sison* was not an inhabitant of his county. *Campbell* proceeded against *Strong*, and the issue was made up between *Campbell* and *Strong* alone. It was unnecessary to state, in the indictment, the manner in which the action was commenced. The issue is well described. Had the indictment set out an issue joined between *Campbell* plaintiff, and *Strong* and *Sison* defendants, the record offered in evidence would not have supported that charge in the indictment.

The second error alleged is, that, in the caption of the indictment, the past is used instead of the present tense: the word

*was* instead of the word *is* (1). This is mere clerkship and is not material. The caption is no part of the indictment, and made no part of the proceedings in the Court below. Such an irregularity could not vitiate a judgment which was good at the time of its rendition.

The point which has produced the greatest difficulty is not noticed in the plaintiff's brief, and was but lightly touched in the argument of the cause. The punishment of this offence was changed by law from stripes to confinement in the state prison, after the commission of the offence, and before the conviction. Out of this circumstance two questions arise for our consideration. First, Does the indictment conclude properly "against the form of the statute;" or should it have concluded against the form of the statutes, in the plural? There is but one statute in this state which defines the crime of perjury and annexes a penalty to that offence. The conclusion has reference to the description of the offence. The crime is against the form of the statute which has defined wherein it shall consist, and annexed the penalty. No other statute has any connexion with this offence, except that which provides a commutation of the punishment, by substituting confinement in the state prison for stripes, in this as in all other cases where the punishment of stripes was, by any former law, to have been inflicted. The conclusion in this case, against the form of the statute, we deem sufficient. Secondly, Can a man be sentenced to a punishment different from that which existed at the time the offence was committed? It is insisted he cannot. And why cannot this be done? The legislature has power to enact laws prescribing when, and where, and in what manner crimes shall be punished. The legislature has made the statute under consideration. It has said that it shall take effect from a certain time; and that from and after that time, all persons convicted of crimes which, under the then existing laws, would subject them to the punishment of stripes, shall, in lieu of stripes, be confined in the state prison. The business of a judicial tribunal is not to make or alter the law, but to declare what the law is; and we cannot justify ourselves in saying that the Circuit Court has committed an error in deciding agreeably to legislative authority, unless it is evident beyond all doubt that the legislature has transcended its constitutional powers. To the constitution alone we are to look for a limit to legislative au-

thority. The parliament of *Great Britain*, whence we have derived our first ideas of legislative as well as of judicial authority, has claimed and in many instances exercised the power of enacting laws calculated to entrap the subject, and expose him to capital or other punishment for actions which, at the time of their performance, were perfectly innocent, or to inflict greater punishments for acts already criminal, than were by law annexed to such offences at the time they were committed. By the enactment of such statutes, the most faithful subjects of that kingdom have been sacrificed; and in times of internal commotion and political persecution, the blood of innocent victims has been made to smoke on the altar, as an oblation to the malignant passions of men in power. The framers of our constitution, knowing these facts, wisely provided a limit to legislative power. In the 18th section of the first article of the constitution it is provided, that no *ex post facto law* shall be made. If the statute under consideration is not prohibited by this clause of our constitution, it is nowhere prohibited in that instrument. What then is an *ex post facto law?* Literally it means any law which relates to, and operates upon, a fact which existed prior to its enactment. This sense of the words is too large and indefinite to be received as the sense in which they were used and understood by the framers of our constitution. Many statutes have a retrospective operation, which cannot be supposed to be included in this constitutional prohibition. Of this description are all acts legalizing past proceedings, all acts of relief, of pardon, or indemnity; all acts which mitigate the malignity of an offence, or mollify the rigour of the criminal law; and many others which might be enumerated. These are all retrospective, but are not in the constitutional sense *ex post facto*. The words *ex post facto* have a definite, technical signification. The plain and obvious meaning of this prohibition is, that the legislature shall not pass any law, after a fact done by any citizen, which shall have relation to that fact, so as to punish that which was innocent when done; or to add to the punishment of that which was criminal; or to increase the malignity of a crime; or to retrench the rules of evidence, so as to make conviction more easy (2). This definition of an *ex post facto* law is sanctioned by long usage: the words had acquired an established, definite, technical signification, *long before British* jurisprudence was known, or the *English* language spoken, in *America.*

In this sense the words have been used and understood by the most celebrated statesmen and jurists, both here and in *England.* We have given this very brief explanation of the technical meaning of these words, because, in their literal sense, they convey no definite idea. Apply this definition to the act under consideration. Does this statute make a new offence? It does not. Does it increase the malignity of that which was an offence before? It does not. Does it so change the rules of evidence as to make conviction more easy? This cannot be alleged. Does it, then, increase the punishment of that which was criminal before its enactment? We think not.

But, admitting this point to be doubtful, in a case like the present a doubt alone is sufficient to determine our minds. This statute has passed through the constitutional ordeal, and has come out justified by the legislature that enacted it, by the governor who approved it, and by the Circuit Court that adjudicated upon it; and it must be a very clear case indeed that would justify this Court, after all, in setting aside and reversing the decision of the Circuit Court in conformity with its provisions. The legislature has the power to pass any law which it may deem necessary for the public good, not inconsistent with the first principles of government, nor contrary to the provisions of the constitution. If, in conforming to statutory provisions, we are occasionally led off from the ancient land-marks, and on some occasions vary from the established doctrines of *English* books, it is because *ita scriptum est.* The principal points however in this case, are decided in conformity to respectable authority. See 3 Dall. 386; 2 Binney, 338, 9; and authorities there cited. While, on the one hand, we consider it our duty to give all due weight to objections, however nice and technical, arising out of, or having relation to, the right and justice of the case, or which relate to matters substantially affecting the interest of the accused; we would, on the other hand, guard against the evil of giving too easy an ear to such as rest on a mere form of words, and can have no possible bearing on the merits of the case, or the interest of those concerned—an evil which has been long and very justly complained of as a disease of the law. The judgment must be affirmed.

*Per Curiam.*—The judgment is affirmed, with costs.

*Caswell,* for the plaintiff.

*Moore,* for the state.

(1) A writ of error of a judgment in White-chapel. After the record was read, *Hale* C. J. said, The acts of a Court ought to be in the present tense; as *præceptum est*, not *præceptum fuit*: but the acts of the party may be in the preterperfect tense; as *venit et protulit hic in curia quandam querelam suam;* and the continuances are in the preterperfect tense, as *venerunt*, not *veniunt. Anon.* 1 Mod. 81. Vide also *Rex* v. *Perin*, 2 Will. Saund. 393, and note.

(2) Vide Const. *U. S.* a. 1, s. 10.—*Calder* v. *Bull*, 3 Dall. 386.—*Fletcher* v. *Peck*, 6 Cranch, 87.—*Society*, &c. v. *Wheeler*, 2 Gall. 105.—Serg. C. L. 346—355.—1 Kent's Comm. 381.—*Ogden* v. *Saunders*, 12 Wheat. 213.