COMMONWEALTH *vs.* ABIGAIL GARDNER.

The *St.* of 1858, *c.* 154, establishing and defining two degrees of murder, to be found by the jury, one punishable with death and the other with imprisonment for life, applies to an indictment to which the defendant had pleaded before its passage; and does not affect the jurisdiction of this court over such indictments.

The *St.* of 1858, *c.* 154, § 6, which provides that nothing in that statute shall be construed to change the existing forms of indictment, does not conflict with the twelfth article of the Declaration of Rights.

ABIGAIL GARDNER was indicted in Plymouth for the murder of her husband, and pleaded not guilty at May term 1857. A trial was had at that term and resulted in a disagreement of the jury. She was again tried at May term 1858, before Justices *Metcalf*, *Bigelow*, and *Merrick*, after the passage of the *St.* of 1858, *c.* 154, was found guilty of murder in the second degree, under the provisions of that act, and moved in arrest of judgment upon the following grounds :

" 1st. Because issue was joined and the defendant pleaded not guilty at May term of this court in the year 1857, under chapter 125, section 1 of the Revised Statutes, and said indictment

was tried at the present term of this court, and the issue presented to the jury by the order of the court was whether the defendant was guilty or not guilty of murder in the first or second degree under the provisions of chapter 154 of the statutes of 1858.

" 2d. Because section 1 of chapter 125 of the revised statutes is repealed.

" 3d. Because the defendant cannot be legally sentenced for murder in the second degree under the provisions of the statute of 1858.

" 4th.  Because there is no law applicable to the punishment of the defendant under this indictment, under which she can be legally sentenced.

" 5th. Because this court has no jurisdiction of this case."

The defendant also moved for a new trial, " because the court instructed the jury that the issue to be tried by them was whether the defendant was guilty of murder in the first or in the second degree, or not guilty of murder, as provided and declared in chapter 154 of the laws of 1858."

*C. G. Davis,* for the defendant. 1. This court has no jurisdiction of this case, unless after the passage of the *St.* of 1858 the defendant would be still deemed legally charged with a crime punishable with death. Rev. Sts. *c.* 81, §§ 3, 13, 19 ; *c.* 82, § 26 ; *c.* 125, § 1 ; *c.* 136, § 21.  *St.* 1844, *c.* 44, § 4.  She could not be charged with a crime which did not exist when she pleaded to the indictment.  She had been once tried on this indictment for murder at common law ; and the indictment cannot be construed to charge " murder with deliberately premeditated malice aforethought," or " with extreme atrocity or cruelty," according to *St.* 1858, *c.* 154, § 1.

The question is whether the defendant could have been convicted of murder in the first degree.  The jury under the *St.* of 1858 are to find a new fact, which before was not an element of the crime, and which, superadded, makes a new crime before unknown to the law.  It is immaterial what name is given to it by the legislature.  This indictment cannot be construed to have charged more than the law intended that it should when

the defendant pleaded to it; if it had, that would have been surplusage, which cannot now be treated as a legal charge of a crime.

The court cannot hold jurisdiction by reason of having once acquired it. If a statute conferring jurisdiction is repealed, no further proceedings can be had in suits pending. *Miller's case,* 1 W. Bl. 451. *Rex* v. *Justices of London,* 3 Bur. 1456. *Stoever* v. *Immell,* 1 Watts, 258. *In re Hatfield Road,* 4 Yeates, 392. *Illinois & Michigan Canal* v. *Chicago,* 14 Ill. 334. The offence here charged has ceased to be punishable with death; and the jurisdiction is thus taken away.

But for the provision of § 6, (which is merely prospective, if operative at all,) a common law indictment, since the *St.* of 1858, charges only murder in the second degree. Declaration of Rights, art. 12. *Finn* v. *State,* 5 Ind. 400. *Dick* v. *State,* 3 Ohio State R. 89. This case is different from that of including murder and manslaughter in one indictment, in which by law and usage and numberless authorities the charge of murder includes the lesser crime of manslaughter. If the defendant had been convicted or had pleaded guilty before the passage of the new act, and been called up for sentence after, could she have been sentenced for murder in the first degree? How could she have been sentenced at all, since the degree of murder must be found by the jury?

The sixth section of the *St.* of 1858 is unconstitutional, at least so far as it is applicable to an indictment to which the defendant has already pleaded. It changes and enlarges such an indictment. " The existing forms of indictment" do not " fully and plainly, substantially and formally " describe murder in the first degree as required by art. 12 of the Declaration of Rights. This statute makes innovations in the rules of criminal pleading. It requires more evidence to convict of murder in the first degree. It changes the issue of finding not guilty or guilty " and no more." Those states, in which it has been held that a common law indictment for murder will support a conviction of murder in the first degree, have not so stringent a declaration of rights as Massachusetts.

2. The *St.* of 1858, *c.* 154, has repealed the old law against murder; for it is not cumulative, but contains repugnant provisions as to the definition and elements of the crime, the rules of pleading and evidence, and the punishment. *Commonwealth* v. *Kimball*, 21 Pick. 376. *Goodenow* v. *Buttrick*, 7 Mass. 141. *Bartlet* v. *King*, 12 Mass. 545. *Mason* v. *Waite*, 1 Pick. 452. *Nichols* v. *Squire*, 5 Pick. 168. *Commonwealth* v. *Chapin*, 5 Pick. 199. *Commonwealth* v. *Cooley*, 10 Pick. 39. *Commonwealth* v. *Phillips*, 11 Pick. 31. *Commonwealth* v. *Ayer*, 3 Cush. 152. *Commonwealth* v. *Herrick*, 6 Cush. 467. *Towle* v. *Marrett*, 3 Greenl. 22. *Leighton* v. *Walker*, 9 N. H. 59. *Commonwealth* v. *Cromley*, 1 Ashm. 179. Report of Judges, 3 Binn. 595, 597. *Messer* v. *Commonwealth*, 25 Penn. State R. 126. *Scutt* v. *Commonwealth*, 2 Virg. Cas. 54. *United States* v. *Irwin*, 5 McLean, 178. *State* v. *Whitworth*, 8 Porter, 434. *Smith* v. *State*, 1 Stew. 506. *Rogers* v. *Watrous*, 8 Tex. 62. *The King* v. *Davis*, 1 Leach (4th ed.) 271. *Rex* v. *Cator*, 4 Bur. (4th ed.) 2026. *Henderson* v. *Sherborne*, 2 M. & W. 236. *Attorney General* v. *Lockwood*, 9 M. & W. 378. *Ex parte Caruthers*, 9 East, 44. 1 Bl. Com. 89. Bac. Ab. Statute, D. Dwarris on Sts. (2d ed.) 530–532. 1 Bishop on Crim. Law, § 92 & cases cited.

*S. H. Phillips*, (Attorney General,) for the Commonwealth, cited *Commonwealth* v. *Herrick*, 6 Cush. 465; *Commonwealth* v. *Wyman*, 12 Cush. 237; *Jennings* v. *Commonwealth*, 17 Pick. 82; *Weighorst* v. *State*, 7 Maryland, 442; *Calder* v. *Bull*, 3 Dall. 386; *State* v. *Dowd*, 19 Conn. 388; Rev. Sts. *c.* 143, § 18.

SHAW, C. J. This indictment was found, and one trial had, before the passage of the *St.* of 1858, *c.* 154. It is objected that the *St.* of 1858 repeals the law under which the defendant was indicted, upon the well settled principle of criminal law, that the law inflicting punishment must exist when the act is done, and when judgment is given for the punishment of it. The great object of punishment is to prevent the commission of crime; and any law not in force at the time of the commission of the alleged offence cannot have that effect.

If the objection is well founded, all murders committed before the *St* of 1858 took effect are forever dispunishable, because this

act contains no saving clause in regard to murders committed before its passage. And the question is, what is the intent of the legislature, as expressed in the words which they have used. This depends altogether upon the construction of the act of 1858. It is divided and distributed into several distinct sections, presenting the same question.

SECT. 1. " Murder committed with deliberately premeditated malice aforethought, or in the commission of an attempt to commit any crime punishable with imprisonment for life, or committed with extreme atrocity and cruelty, is murder in the first degree."

Here is no change of punishment, no definition of murder; but only a provision that a party indicted for murder may be convicted of either degree on proof of the facts.

SECT. 2. " Murder not appearing to be in the first degree is that in the second."

Taking these two first sections, murder under the former law is murder now, and the statute only declares the degree of murder.

Then comes section 3, which is the key to the whole case. " The degree of murder is to be found by the jury."

SECT. 4. " Whoever is guilty of murder in the first degree shall suffer the punishment of death for the same, subject, however, to such conditions, regarding the time and manner of executing sentence, and the custody or imprisonment of the convict prior thereto, as shall have been otherwise provided by law."

SECT. 5. " Whoever is guilty of murder in the second degree shall be punished by imprisonment in the State prison for life."

SECT. 6. " Nothing herein shall be construed to require any modification of the existing *forms* of indictment."

SECT. 7. " This act shall take effect from and after its passage " — March 27th 1858. This is the whole.

In the first place then, did the first provision, making murder in the first degree punishable with death, repeal the preceding aws making murder punishable with death ? It does not repeal them, unless repugnant, inconsistent, incompatible. Is it repugnant, inconsistent, or incompatible ? We know that murder

before this statute was punishable with death. This statute does not declare for the first time that murder in the first degree shall be punished with death; it declares it in almost the same words as before. It takes very nearly the same distinction which the common law took between murder by express, and that by implied malice. The statute does not create the offence; it only declares it; it existed before. There is no change then in making some classes of murder punishable with death; they were so before.

Then what is the change? If, after indictment, upon the trial the jury find a certain class of facts, they find one degree; if another class of facts, another degree. It is therefore to allow the mitigation of the offence in one case. The substitution of imprisonment for life, in place of death, is a mitigation in the eye of the law; it is everywhere so regarded; it is on that ground that the executive power of commutation is founded. The statute proceeds on the same ground. The jury were to find it either murder in the first degree, or murder in the second degree, but murder still. In a matter of this solemnity, we are not to look at the words of the statute merely, but at their legal operation and legal effect. The legal effect is to mitigate the punishment in one case, leaving it punishable as it was in the other.

Had this been previously the reverse, that is to say, had murder in the second degree been punishable by a penalty less severe than that declared by the new statute; for instance, had the former law punished it by imprisonment in the State prison for ten years, and the new statute extended the punishment to twenty years; it would clearly have been *ex post facto*, unconstitutional and void. In that case this principle could not have been applied; for it would then have been imposing a more aggravated punishment on the offence, than that declared by law and in force when the offence was committed.

It is said that this statute has changed the jurisdiction of the court. But we see no possibility by which, taking the whole statute together, it can be held that the jurisdiction is changed. " The degree of murder is to be found by the jury." § 3. That

is, manifestly, the jury of trials, the traverse jury. It does not therefore change the duties of the grand jury, or of the attorney general or other officer who attends the grand jury.

We consider the provision in the *St.* of 1858, § 6, that " nothing herein shall be construed to require any modification of the existing forms of indictment," to be an essential part of the statute, and to determine this question of jurisdiction. It seems to us to have been the clear intent of the legislature, that the form of an indictment for murder should remain as it had been, being a charge, with all the technical requisites, of homicide with malice aforethought, making no distinction in the forum in which it should be found and that in which it should be tried, and no other distinction, except in the punishment of one degree, as it should be modified by the evidence. As such an indictment does charge an offence, punishable, before and after this act, with the penalty of death, this court had jurisdiction secured by the preëxisting law, and it is not taken away. Had the statute enumerated the ingredients constituting murder in the first degree, leaving all other murder to be of the second degree, saying nothing about the form of indictment, there would have been much force in the argument that the law constituted two distinct offences, one capital and the other not, and the indictment must have conformed to these changes, that would have changed the jurisdiction of the court. As it is, the legislature manifestly considers murder as one kind or species of crime, the punishment of which may be more or less severe according to certain aggravating circumstances, which may appear on the trial.

In this respect, it is similar to a provision in the case of arson, as it stood by the revised statutes, which provided in express terms that the wilful and malicious burning of the dwelling-house of another in the night time should be punishable with death but by another clause in the same section it was declared, that if it should be proved on the trial, and the jury should find, that no person was lawfully in the dwelling-house so burned, the punishment, instead of death, should be imprisonment in the State prison for life. In that case, the law manifestly required no change in the form of indictment, none in the mode of pleading

or the form of trial; and of course, as in one event the punishment would be capital, the jurisdiction of this court was not taken away or in any way affected. Rev. Sts. c. 125, § 1.

That it was the intention of the legislature to put this provision for the punishment of murder on the same footing, leaving the definition of the offence and the mode of indictment and trial as they were, but to vary the punishment, according to certain circumstances appearing on the trial, appears to us to be clear. But it was argued that it is not competent for the legislature so to provide, because it was inconsistent with the 12th article of the Declaration of Rights, declaring " that no subject shall be held to answer for any crime or offence, until the same is fully and plainly, substantially and formally described to him." This is an important security to the subject, and ought to be conscientiously observed by the legislature, in the framing of new penal laws. And where the true effect of a statute is to create a new offence with a penalty, or make distinct offences, with different definitions and punishment, of what was one before, undoubtedly it would be more in conformity with the Bill of Rights to make the indictment correspondent with the new definitions. But we are of opinion that where the definition of murder is so perfectly clear and well settled, and where the form of indictment is uniform and long established, it is not a violation of this provision in the Bill of Rights, to consider the crime as still one and the same, the form of prosecution the same, the jurisdiction the same; but to mitigate the punishment when certain circumstances of palliation appear on the trial, which is the present case.

We are pressed with the question — and it is certainly a fair question to test the nature and character of the statute — What judgment could the court render, should a defendant, on his arraignment on such an indictment, plead guilty, generally?

The first answer is, that that is not the present case. The defendant pleaded not guilty, generally, and thereby denied ne charge of having committed any murder. And the case of *Commonwealth* v. *Wyman*, 12 Cush. 237, is an authority to show that when the punishment is mitigated by a new act between the

commission of the offence and the trial and sentence, the party may have the benefit of the mitigating law; and on reconsidering the question, we are still of opinion that in that case we came to the right result.

In a case of so much importance as a charge of murder, the legislature probably assumed that, in the vast majority of cases, there would be a plea of not guilty, and of course a trial and an inquiry into the facts. Possibly they did not distinctly contemplate the case of a plea of guilty. Should such a rare case occur, it would probably be for the judges to consider whether, under the circumstances, such a plea without further qualification ought to be received; or whether the accused should not be required to plead guilty to the charge of murder in the first degree; or if his real intention were to deny his liability for murder in the first degree, he should not be required to plead not guilty generally, upon which there might be a trial, and a finding of the facts by a jury, upon the evidence. But however this may be, if this statute is constitutional, and authorizes a prosecution for murder as before, only changing the punishment upon the appearance of certain mitigating circumstances, then this court retains its jurisdiction, and in the exercise of that jurisdiction, at every step of the prosecution, trial and judgment, it will be its duty so to conduct every step, that every part of the law shall have its proper and natural effect, according to the true intent of the legislature.

The law gives the court jurisdiction to try an indictment returned into this court; and this court, having jurisdiction, may proceed to the end with the case, and pronounce sentence, though it should result in finding the defendant guilty of a mere simple assault, pursuant to the Rev. Sts. c. 137, § 11. *Commonwealth* v. *Drum*, 19 Pick. 479. The question is, whether this is an indictment charging a crime punishable with death. It clearly is; and jurisdiction, having once attached, it is to be carried out to its final results. Where an indictment was certified irregularly, or not certified into this court at all, we held that this court could not be deprived of its jurisdiction; but that we could by *certiorari*, or other proper process, order the indictment to be returned here. *Webster* v. *Commonwealth*, 5 Cush. 386.

It is argued on the authority of *Commonwealth* v. *Kimball*, 21 Pick. 373, that when the penalty of the law is changed, the former law is repealed by implication. But that is to be taken with all the limitations of that case ; where the penalty is changed, and the mode of prosecution is changed ; where it appears from the whole statute that the legislature intended to revise the whole subject. But this statute does not revise or change the whole subject. We have held, that where a law uses the same words as an old law, the second is declaratory, and not repugnant, and the party may still be punished for an offence alleged to have been committed prior to the passage of the last act.

As there is no change in the form of prosecution, there is no change in the jurisdiction. The effect of the statute is not to punish acts not before punishable, but to mitigate the punishment. *Motions in arrest and for new trial overruled.*