IN THE MATTER OF THE APPLICATION OF JOHN F. BOWLER, on behalf of T. B. WALKER, for a Writ of Habeas Corpus.

HEARING, JUNE 27, 1893.          DECISION, JUNE 28, 1893.

JUDD, C.J., BICKERTON AND FREAR, JJ.

The Executive and Advisory Councils of the Provisional Government were given general legislative power by the Proclamation of January 17, 1893.

Art. 77 of the Constitution of 1887, which provides that "every law shall embrace but one object, and that shall be expressed in its title," should be liberally construed.

One section of a law may be constitutional, although another section embraces an object not expressed in the title.

Section 5 of Act 3 of the Provisional Government is not contrary to Article 77 of the Constitution of 1887.

An offense may be described in a warrant of arrest by reference to an affidavit on the same page.

Act 38 of the Provisional Government which provides that in certain cases of arrest "the person arrested shall not be admitted to bail without the consent of the Attorney-General," is constitutional.

An Act which is described in its title as an amendment to a preceding Act and which expressly repeals the preceding Act, is not thereby itself repealed.

OPINION OF THE COURT, BY FREAR, J.

The prisoner is held by the Marshal under a warrant of arrest issued by the District Magistrate of Honolulu, in the usual form, commanding the Marshal to arrest the prisoner and two others "accused of the crime of conspiracy as in the foregoing affidavit." The affidavit is that of E. G. Hitchcock and is in the usual form upon the same sheet of paper and just above the warrant of arrest, the affiant swearing that the defendant and said others, naming them, "at said Honolulu

within three months last past were guilty of the crime of conspiracy, by maliciously and treasonably conspiring and concerting together, and conspiring and concerting with others to the affiant unknown to overthrow, and put down, and destroy by force the Provisional Government of the Hawaiian Islands, and to levy war against said Provisional Government, and to oppose by force the authority of and by force to seize, take and possess certain property of said Government, to wit, the government building, now occupied by the Executive Council of said Government, contrary to the authority of the same," using substantially the language of Section 5, Act 3, of the Provisional Government, being an Act "To Amend Chapter 6 of the Penal Code, Relating to Treason."

Counsel for the prisoner contends that the prisoner should be discharged, because (1) the Executive and Advisory Councils of the Provisional Government had no power to pass Act 3 prior to the passage of Act 4, which provided among other things that the two Councils should act jointly in the exercise of general legislative powers; and (2) Act 3 is void under Article 77 of the Constitution of 1887, which provides that "every law shall embrace but one object, and that shall be expressed in its title," inasmuch as the title of Act 3 relates to treason only, while Section 5 relates to conspiracy, and Sections 6 and 7 to other offenses; and (3) because the warrant does not set forth with sufficient particularity the offense for which the defendant was arrested.

The first of these points is *res adjudicata*. This Court has held that the Executive and Advisory Councils possess general legislative power by virtue of the Proclamation of January 17, 1893, and not by virtue of Act 4. *In re Sheldon* (page 32 *ante*), decided March 31, 1893; *Provisional Government vs. Hering* (page 169 *ante*), decided June 27, 1893.

As to the second point, the reason for requiring that "every law shall embrace but one object, and that shall be expressed in its title," is, as expressed in Article 77 itself of the Constitution, "to avoid improper influences which may

result from intermixing in one and the same act, such things as have no proper relation to each other." The improper results to be avoided are, principally, "hodge podge," or "log-rolling" legislation, surprise or fraud upon the legislature, and concealment of the subjects of legislation from the people. *Hyman Bros. vs. Kapena,* 7 Haw. 76. The evil producing these results is the intermixing of such things as have "no proper relation to each other." If, therefore, looking at the reason stated in Article 77 itself, the things covered by the law have a proper relation to each other and these are fairly well embraced in one object, however general, and expressed in the title, it is sufficient. This provision of the Constitution should be liberally construed. To construe it strictly would, by hampering legislation, cause as great evil in one direction as was intended to be prevented in the other direction. Says Judge Cooley (Const. Lim. pp. 144, 146):

" The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object, to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible. * * * The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. The legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it. * * * There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted."

The courts of California and Ohio even go so far (too far, we think) as to hold that such provisions of the constitution

are merely directory and not mandatory at all. *Washington vs. Murray*, 4 Cal., 388; *Pim. vs. Nicholson*, 6 Oh. St. 177. In *O'Leary vs. Cook Co.*, 28 Ill., 534, cited with approval by Judge Cooley, it was held that a clause prohibiting the sale of ardent spirits within four miles of a college was so related to the primary object of an act incorporating the college as to be properly included within it.

It is unnecessary to consider Sections 6 and 7 of Act 5, for, even if they are not fairly within the object of the Act as expressed in its title, that would not affect the constitutionality of the rest of the Act. Cooley Const. Lim., p. 148. There can be no question that the offense described in Section 5, under which the prisoner is charged, is properly related to treason. Section 1 provides that persons who levy war against the government, or adhere to its enemies, are guilty of treason. Section 2 provides the penalty for treason. Section 3 relates to the evidence necessary for conviction. Section 4 provides for the punishment of those who, having knowledge of the commission of treason, conceal it. Section 5 provides for the punishment of those who conspire to levy war, etc., against the government. The offenses described in Sections 1, 4 and 5 clearly are all closely related to each other. They are all offenses of a treasonable nature— offenses directed against the existence of the government— and are most properly joined in the same act, as much so as murder and manslaughter, and even assault and battery, might be properly united under one act. Further, for aught that appears, the offense set forth in Section 5 may be considered treason itself as much so as the offense set forth in Section 1. Section 5 merely provides that those who do certain things therein specified shall be punished in a certain way and while from one part of the description of the offense it might be called conspiracy, yet from the rest of the description it might just as well be called treason. No name is given to the offense in the section itself. The offense may be either treason or conspiracy, just as certain acts may amount to either murder or manslaughter. There is nothing

in the nature of treason to confine it to the acts mentioned in Section 1. Under English statutes a great many other acts have been made treason. It is a common form of penal statute to provide that if a person does certain acts he shall suffer a certain punishment, without giving in terms any specific name to the offense. Chapter 6 of the Penal Code, entitled "Treason," in Section 10—like Section 4 of Act 5 of the Provisional Government—provides for the punishment of persons who, having knowledge of the commission of treason, conceal it. Being of the opinion that Act 3, so far as Section 5 is concerned, is not in conflct with Article 77 of the Constitution of 1887, it will be unnecessary for us to say whether that Article is still in force, or whether it has been or can be repealed by implication.

As to the point that the arrest was illegal because the warrant does not fully describe the offense of which the accused is charged, it is sufficient to say that the offense is described in the warrant by reference to the affidavit on the same page of the document, and that the affidavit sets forth the offense fully and substantially in the words of the statute. The affidavit is part of the warrant. The description of the offense need not be in any particular part of the warrant.

But counsel further contends that if the prisoner cannot be discharged he ought at least to be admitted to bail. Act 38 of the Provisional Government provides that in cases of arrest for the offense for which the prisoner is arrested in the present case, bail should not be allowed without the consent of the Attorney-General. The argument is that to refuse bail in cases of this kind is contrary to constitutional principles in general, and more particularly to Articles 1 and 9 of the Constitution of 1887, relating to liberty. We are not aware that the right to bail has ever been held to be secured by the general provisions relating to the right of liberty under any constitution. The constitutions of most of the United States provide that persons shall, before conviction, be admitted to bail in all but certain excepted cases, the exception most generally being confined to capital cases.

Stimson, Am. St. Law, Section 122. The Constitution of 1887 contains no similar provision. In the absence of such constitutional provision, bail is wholly a matter of statutory regulation. This appears clearly from the history of bail in England. 1 Stephen, His. Cr. Law of Eng., 233 *et seq.* Nor is the granting or refusing of bail a matter to be exercised by judicial officers only. In England for centuries "the sheriff was the local representative of the crown, and in particular he was at the head of all the executive part of the administration of criminal justice. In that capacity he arrested and imprisoned suspected persons, and, if he thought proper, admitted them to bail." *Ib.* 234. It is competent in the absence of constitutional provision to the contrary for the legislature to provide that no bail shall be allowed at all, and, of course, that it shall not be allowed without the consent of any particular officer. It is not for us to inquire into the policy or wisdom of such a law. That rests solely with the legislative body.

It is further urged that since Section 9 of Act 3 in terms repeals Chapter 6 of the Penal Code, Act 3 itself which is by its title only an amendment of Chapter 6 of the Penal Code, must also be repealed. If this were so, the repealing section would also be repealed, that is, it would repeal itself (which would be absurd.) And if it were itself of no effect then it could not repeal Chapter 6 of the Penal Code (which would also be absurd.) It would be to argue in a circle. The argument would be as follows: Section 9 repeals Chapter 6, and therefore Act 3, and therefore Section 9, and therefore not Chapter 6, which is contradictory to the first proposition. It was the manifest intention of the legislative body to amend the law relating to treason, by substituting Act 3 for Chapter 6 of the Penal Code. To sustain counsel's views would be to repeal the entire law relating to treason, which would be as far as possible from the manifest intention of the legislative body. Taking the whole law together, it may well stand, although carelessly drafted. Where an amendment is intended to take the place of a preceding act it impliedly repeals it.

So where the act is amended " so as to read" in a prescribed way. Endlich, Interpretation of Statutes, Sections 195, 196. If an amendment can repeal the preceding act by implication, and yet itself stand, certainly it can also stand where the preceding act is expressly repealed.

"There is the strongest kind of presumption against the existence of that species of absurdity in the intention of the legislature which would consist in a design to defeat its own object. Yet it not infrequently occurs that one portion or provision of a statute, if literally or even naturally construed, would practically nullify the whole, or some material portion of the remainder of the act, with the effect of defeating its obvious purpose. In cases of this description it is a settled rule of construction, flowing from the obvious absurdity of any other, that such an interpretation shall if possible be placed upon the statute, *ut magis valeat quam pereat.* \* \* \* A declaration in the last section of an act that all acts or parts of acts relating to the subject matter thereof should be repealed from and after the time when the act should take effect, would not be construed as a repeal of that act, but of all others on the same subject matter." *Ib.*, Section 265. The repealing section need not be referred to in the title of the act. Cooley, Const. Lim. 145.

It appearing that T. B. Walker, in whose behalf the petition is made, is held under a valid warrant of arrest, issued by competent authority, for an offense which is not bailable under a constitutional law, he is hereby remanded to the custody of the Marshal.

*C. Creighton,* for petitioner.

*A. S. Hartwell,* for respondent.