STATE OF HAWAII *v.* LUCILE B. BUNN.

No. 4456.

MAY 8, 1968.

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

On January 19, 1964, Lucile B. Bunn, appellant, drove her automobile on Diamond Head Road in Honolulu at a high rate of speed, crossed over the center line to the left side of the road, and struck an automobile approaching from the opposite direction. The occupants of the approaching automobile, Christopher J. Benny, and his wife, Ruth Lucille, were injured in the accident and subsequently died.

The Honolulu Police Department investigated the accident, and on February 14 an investigating officer signed a complaint before a district magistrate charging appellant with the commission of the offense of negligent homicide in violation of R. L. H. 1955, § 291-10. The complaint contained two counts, one for causing the death of Benny and the other for causing the death of his wife.

Appellant was arraigned in the district court on February 19, at which time she waived preliminary examination and was committed to the circuit court for jury trial, subject to indictment by the grand jury.

At the time of the accident, the negligent homicide statute read as follows:

"§ 291-10. Negligent homicide; penalty. Every person who by the operation of any vehicle in a careless, reckless or negligent manner, but not wilfully or wantonly, causes the death of another, shall be guilty of the crime of negligent homicide and shall be imprisoned at hard labor not more than five years."

While the case was pending in the circuit court, the Legislature enacted Act 48 of the Session Laws of 1964, which amended the negligent homicide statute to read as follows:

"§ 291-10. Negligent homicide; degrees; penalties. (a) Every person who by the operation of any vehicle in a grossly negligent manner causes the death of another, shall be guilty of the crime of negligent homicide in the first degree and shall be imprisoned at hard labor not more than five years.

" (b) Every person who by the operation of any vehicle in a negligent manner causes the death of another, shall be guilty of the crime of negligent homicide in the second degree and shall be fined not more than $1,000.00, [or] imprisoned not more than one year, or both."

The act was approved by the Governor on April 30 and became law on that date. A provision in the act made it applicable to all cases of negligent homicide pending before the circuit courts at the time it took effect as law.

Hereafter in this opinion § 291-10 as it existed before Act 48 became law will be referred to as the former § 291-10, and the same statute as amended by Act 48 will be referred to as the new § 291-10.

On May 8, appellant appeared in the circuit court with her counsel, waived prosecution by indictment, and consented to a proceeding by information. The prosecuting attorney thereupon filed an information charging appellant with the commission of the offense of negligent homicide in the first degree in violation of § 291-10.

The statute mentioned in the information is obviously the new § 291-10. As in the case of the complaint signed by the investigating officer, the information charged the commission of the offense in two counts.

Upon the filing of the information, appellant asked the court for a continuance of two weeks within which to enter her plea. The court granted the request. This was done to enable appellant's counsel to study Act 48 and the effect of its enactment upon appellant's liability for the offense charged in the information.

Two weeks later, on May 22, appellant entered a plea of not

guilty to both counts of the information. But on July 28, she withdrew her plea of not guilty and pleaded nolo contendere. Upon the entry of this plea of nolo contendere, the court orally adjudged appellant guilty and referred the matter to the adult probation officer for investigation and report.

Appellant's counsel was in court at the time appellant changed her plea, but made no statement other than to apprise the court that his client desired to change her plea and that he had informed her about the penalty for the offense with which she had been charged.

On August 28, the circuit court entered its judgment, and sentenced appellant to imprisonment at hard labor for five years as to the first count and five years as to the second count, both sentences to run concurrently.

The case is before this court on appeal from the foregoing judgment and sentence.

In her opening brief, appellant urged only one ground for reversal, namely, that her conviction is void because it is for a violation of the new § 291-10, which she contends is an ex post facto law as applied to the act of negligence with which she was charged in the information.

This contention had not been presented to the circuit court, although appellant's counsel was aware of the existence of the problem before appellant entered her plea of nolo contendere.

Consequently, relying on the general rule that appellate courts will not consider questions which were not raised in the trial courts, the prosecution moved to dismiss the appeal.

This court deferred consideration of the motion, ordered the prosecution to file its answering brief, and heard the argument on the motion at the same time it heard the argument on the merits.

The rule upon which the prosecution relies for its motion to dismiss is one that is founded on considerations of fairness to the courts and to the parties, and also of the public interest in bringing litigation to an end after fair opportunity has been accorded to litigants to present all issues of law and fact.

This court followed the rule in *Territory* v. *Kelley,* 38 Haw.

433 (1949); *Territory* v. *Tsutsui,* 39 Haw. 287 (1952); and *Territory* v. *Alford,* 39 Haw. 460 (1952).

The rule is not a rigid one, and may be deviated from, if deviation is necessary to serve the ends of justice or to prevent the denial of fundamental rights. *United States* v. *Atkinson,* 297 U.S. 157, 160 (1936); *Re Guardianship of H. K. Ward,* 39 Haw. 39, 46 (1951).

The ground for reversal appellant urged in her opening brief involves an important constitutional issue affecting her fundamental rights. We therefore deny prosecution's motion to dismiss this appeal.

We turn now to the merits of this appeal. In this connection, it may be stated that appellant has asserted in her reply brief a ground for reversal premised on Act 102 of the Session Laws of 1965, which is in addition to the ground for reversal urged in her opening brief. Act 102 became law after appellant filed her opening brief and before her reply brief was due. It amended § 258-52, which governs the determination of the minimum term of imprisonment in a felony case. Appellant's position with respect to Act 102 is that it also is an ex post facto law as applied to her situation.

Freedom from prosecution or punishment under an ex post facto law is a right recognized in article I, section 10, of the United States Constitution, which enjoins any state from enacting such laws.

The United States Supreme Court considered this constitutional provision in *Calder* v. *Bull,* 3 U.S. (3 Dall.) 385 (1798), where it held that the prohibition applies only to criminal statutes and defined an ex post facto law within the words and intent of the prohibition as follows:

> "* * * 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal

rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender. * * *"

There are restatements of this definition in more general terms in later cases, but they do not change its substance. *Lindsey* v. *Washington*, 301 U.S. 397, 401 (1937) ; *Ex parte Medley*, 134 U.S. 160, 171 (1890) ; *Beazell* v. *Ohio*, 269 U.S. 167, 170 (1925). The statement in *Lindsey* v. *Washington* is that the Constitution "forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer."

Appellant advances two arguments in contending that the new § 291-10 is an ex post facto law in the context of this case. First, she argues that Act 48 repealed the former § 291-10, thereby abrogating the existing crime of negligent homicide, and creating in the new § 291-10 two new crimes of negligent homicide in the first degree and negligent homicide in the second degree. Her second argument is that if the act did not repeal the former § 291-10 but amended that statute, it did so to the detriment and material disadvantage of the persons who committed the crime before it took effect as law.

We do not think that Act 48 repealed the former § 291-10. The act does not contain an express repeal of that statute. So, if there has been any repeal, it must be by implication.

Appellant says that there has been an implied repeal under the rule recognized in *In re Walker*, 9 Haw. 171, 176 (1893), that the enactment of a later statute covering the entire subject matter of an earlier statute and intended as its substitute operates as a repeal of the earlier statute.

Under this rule, the earlier statute is treated as being completely replaced by the later statute, and any provision of the earlier statute which is repeated in the later statute is deemed to be a new enactment and not a continuation of the former provision. But in order to come within this rule, the later statute must satisfy two requirements, first, that it embrace the entire subject matter of the earlier statute, and, second, that the legislative intent to have it operate as a repeal of the earlier statute be clear

and manifest. If the later statute does not meet both of these requirements, it will be treated as an amendment of the earlier statute. *Posadas* v. *National City Bank*, 296 U.S. 497, 503 (1936).

The new § 291-10 covers the subject of negligent homicide, which is the same subject covered in the former § 291-10. So, this meets the first requirement.

With reference to the second requirement, appellant argues that the legislature manifested its intention to repeal the former § 291-10 and to replace it with the new § 291-10 by including in Act 48 a provision making it applicable to all cases of negligent homicide pending in the circuit courts.

We think otherwise. In our opinion, the mentioned provision expresses the intention of the legislature to continue the former § 291-10 with ameliorative amendments, and to accord the benefit of such amendments to all defendants in pending negligent homicide cases.

A statute which mollifies the rigor of an existing criminal statute does not come within the constitutional prohibition of ex post facto laws. *Calder* v. *Bull, supra.* We think that Act 48 amended the former § 291-10 to make it less rigorous by dividing the crime of negligent homicide into two degrees and providing a lesser punishment for a lesser degree of the crime. That such was the legislative purpose is evident from the following statement in the act itself:

> "At present the crime of negligent homicide is treated as a felony with the penalty of imprisonment at hard labor for not more than five years. This is a harsh penalty for a person who through simple negligence causes death. * * * The remedy to this problem is to treat negligent homicide due to gross negligence as a felony and negligent homicide due to simple negligence as a misdemeanor."

Division of a crime into degrees, without more, does not result in the creation of a new crime for each degree of the crime. *State* v.*Vineyard,* 96 Ariz. 76, 392 P. 2d 30 (1964) ; *Commonwealth* v. *Gardner,* 77 Mass. (11 Gray) 438 (1858).

If a statute does more than divide an existing crime into

degrees, and changes the elements that make up the crime, then it creates a new crime. *Territory* v. *Marshall,* 13 Haw. 76 (1900).

Act 48 made some language changes in the former § 291-10 in dividing the crime of negligent homicide into two degrees. The former § 291-10 defined the crime as one that is committed by operating a vehicle "in a careless, reckless or negligent manner, but not wilfully or wantonly." The new § 291-10 defines the first degree of the crime as one that is committed by operating a vehicle "in a grossly negligent manner," and the second degree of the crime as one that is committed by operating a vehicle "in a negligent manner."

These language changes did not change the nature of the crime of negligent homicide. As stated in *Territory* v. *Marshall, supra,* "The substance, not the form, is the important thing." An act done "in a grossly negligent manner" is encompassed within the meaning of an act done "in a careless, reckless or negligent manner, but not wilfully or wantonly." Gross negligence is an aggravated form of negligence, which differs from ordinary negligence only in degree and not in kind. *Altman* v. *Aronson,* 231 Mass. 588, 121 N.E. 505 (1919); *Morris* v. *Erskine,* 124 Neb. 754, 248 N.W. 96 (1933). It falls short of recklessness which is not wilful or wanton. *State* v. *Tamanaha,* 46 Haw. 245, 377 P.2d 688 (1962).

We also do not think that Act 48 amended the former § 291-10 to the detriment and material disadvantage of the persons who committed the crime of negligent homicide before it became law.

Appellant contends that the act did so by aggravating the crime, making conviction thereof easier and more likely, and changing and increasing the punishment for its commission.

The contention that the act aggravated the crime is made with reference to negligent homicide in the first degree. The contentions that it made conviction easier and more likely, and changed and increased the punishment, apply to negligent homicide in the second degree. Appellant's conviction is for commission of negligent homicide in the first degree. However, the contentions applicable to negligent homicide in the second degree require consideration in this case because the determination of

the question as to whether a statute is an ex post facto law does not depend upon its operation on a particular individual but upon its effect on all prior wrongdoers as a class. *Murphy* v. *Commonwealth,* 172 Mass. 264, 52 N.E. 505 (1899) .

Relying on statements in *Ex parte Medley, supra; In re Tyson,* 13 Colo. 482, 22 Pac. 810 (1889) ; *Mahanke* v. *Cleland,* 76 Iowa 401, 41 N.W. 53 (1888) ; and *Strong* v. *State,* 1 Blackf. 193 (Ind. 1882) , appellant says that a crime is aggravated by a statute which increases its ignominy, disgrace, opprobrium, and malignity, and the mental anxiety attendant upon conviction for its commission. She then argues that Act 48 aggravated the crime in its definition of negligent homicide in the first degree, for greater opprobrium attaches to a conduct which is grossly negligent than to an act of simple negligence, and conviction of negligent homicide in the first degree as defined in the new § 291-10 necessarily implies the existence of grossly negligent conduct, while conviction of negligent homicide under the former § 291-10 might have connoted no more than a finding of simple negligence.

The answer to this argument is that conviction under the former § 291-10 might have connoted a finding of recklessness. If greater opprobrium attaches to gross negligence than to simple negligence, certainly much greater opprobrium should attach to recklessness. This court stated in *State* v. *Tamanaha, supra,* that recklessness is more than negligence.

Appellant's contention that Act 48 amended the former § 291-10 to the detriment and material disadvantage of prior wrongdoers by making conviction easier and more likely is based on statements in *Louisiana* v. *Masino,* 216 La. 352, 43 So. 2d 685 (1949) , in the act itself, and in the reports of legislative committees which considered the amendment.

*Louisiana* v. *Masino* was an appeal from a judgment quashing an indictment for negligent homicide under Article 32 of the Louisiana Criminal Code. Before the adoption of the code, the manslaughter statute provided the only punishment for negligent killing. Appended to Article 32 was the comment that more convictions could be obtained under a negligent homicide statute than under a manslaughter statute. In its opinion, the court

referred to this comment, and stated: "If this is true, certainly it is a factor to the disadvantage of the accused."

Act 48 contains a statement that the treatment of negligent homicide as a felony regardless of the degree of negligence involved in the killing "has not proven to be a significant deterrent to careless, reckless or negligent driving." When the amendment to the former § 291-10 was under consideration in the Legislature, the Senate Judiciary Committee stated that "the language of the present law on negligent homicide is not conducive to proper law enforcement," and the Conference Committee stated that "A misdemeanor charge in those cases where the element of negligence is not 'gross' would be appropriate and lead to better prosecution with more positive results."

The statement in *Louisiana* v. *Masino* is dictum. The sole issue in the case was: "At what time was the crime committed?" The question as to whether the negligent homicide statute made conviction easier and more likely than under the manslaughter statute was not in issue. If it were properly an issue, we think the following statement in the dissenting opinion sets forth a sounder view:

> "It takes no more than a casual reading of the comment relied upon by the majority to demonstrate that, far from showing that Article 32 places the defendants at a disadvantage, the redactors of the Criminal Code regard the new offense as less severe than the former crime. * * *

> "If this comment can be construed in any light other than that above pointed out, it still should not be used as a determinative factor in deciding whether the statute is ex post facto as it merely expresses the opinion of the redactors. The test which I prefer to employ as a basis for my view to the contrary is that the law is not ex post facto because nothing (the elements of the offense, the rules of evidence or the penalty) has been changed to the detriment of the defendants."

With reference to the statement in Act 48 and in the legislative committee reports, the most that can be said about them is that they show the desire of the legislature to see "better prosecution

with more positive results" and its assumption that the desired result can be attained by lessening the rigor of the existing statute.

In determining the constitutional validity of Act 48, the motivation of the Legislature in enacting it, or its assumption as to its efficacy in producing more convictions, is immaterial. What is material is the actual action which the Legislature took. The actual action taken is the division of the existing crime into two degrees, retaining the felony classification for the greater degree and treating the lesser degree as a misdemeanor. Ordinary negligence was the standard of conduct under the former § 291-10. *State* v. *Tamanaha, supra.* That is, the minimum requirement for conviction was proof of ordinary negligence. The standard remains the same under the new § 291-10. Thus, Act 48 did not make conviction any easier than under the existing statute.

Appellant contends that in providing that a person convicted of negligent homicide in the second degree shall be fined not more than $1,000, imprisoned not more than one year, or both, Act 48 changed and increased the punishment provided in the former § 291-10, which was imprisonment at hard labor for not more than five years. It is her position that the specific mention of a fine in the new § 291-10 is a change because a fine was not mentioned in the former § 291-10. She also takes the position that the maximum imprisonment of one year provided in the new § 291-10, which is a misdemeanor punishment, operates effectively as an increase in punishment although it is less than the maximum imprisonment of five years provided in the former § 291-10, which is a felony punishment, for with respect to imprisonment for felony there is a possibility of parole after being in prison for less than a year but there is no parole connected with imprisonment upon a misdemeanor conviction.

in a felony case the court initially impose the maximum term parole procedure is a part of the over-all statutory scheme that pose a fine under § 258-58. With respect to imprisonment, the

We see no merit in the contention. In a felony conviction, even though a statute may not mention a fine, the court may improvided in the statute, subject to determination of the minimum

term at a later date. In a misdemeanor case, the sentence of imprisonment may from the outset be for less than the maximum term provided in the statute.

The final matter to be considered is appellant's contention that even if this court sustains her conviction, the sentence imposed upon her may not be executed because she is entitled to a determination of the minimum term of her imprisonment, and presently, by reason of the enactment of Act 102 of the Session Laws of 1965, there is no constitutionally valid procedure under which this determination may be made in her case.

Upon her conviction, appellant was sentenced to imprisonment at hard labor for five years. This is the maximum term of imprisonment provided in the new § 291-10 for commission of negligent homicide in the first degree. The sentence was imposed in accordance with the mandate in the first paragraph of § 258-52.

At the time of the imposition of this sentence, the second paragraph of § 258-52 required the board of paroles and pardons to fix the minimum term within three months after the guilty party was committed to the penitentiary, and the third paragraph of that section authorized the circuit court to increase or decrease the minimum term fixed by the board. The minimum term has not been fixed in this case because appellant took this appeal before the board considered the question.

Act 102 amended the second paragraph of § 258-52 by extending the three-month period mentioned therein to six months, and repealed the third paragraph. It contained no saving clause.

Appellant says that at the present time § 258-52, as amended by Act 102, provides the only method for the determination of minimum term of imprisonment, but it cannot be used to fix the minimum term in her case because Act 102 is ex post facto as applied to prior wrongdoers. She also maintains the position that § 258-52, as it existed before the enactment of Act 102, is not available in her case by reason of the absence of any saving clause in the act.

We agree with appellant that Act 102 is an ex post facto law as applied to her situation. Both the amendment to the sec-

ond paragraph and the repeal of the third paragraph are detrimental and disadvantageous to prior wrongdoers.

However, in our opinion Act 102 is subject to § 1-14, the general saving statute, which reads as follows:

"§ 1-14. Effect of repeal on pending suit or prosecution. No suit or prosecution pending at the time of the repeal of any law, for any offense committed, or for the recovery of any penalty or forfeiture incurred under the law so repealed, shall be affected by such repeal."

As construed in *The Queen* v. *Ah Hum,* 9 Haw. 97, 99 (1893), this general saving statute means "that no prosecution for any offense committed in violation of the law then in force, which prosecution was pending when the law was repealed shall be affected by the repeal."

It is stated in *People* v. *McNulty,* 93 Cal. 427, 29 P. 61, 62 (1892), that the purpose of a general saving statute is "to prevent the miscarriage of justice in cases where the legislature should repeal or substantially change a penal statute, and neglect to put a special saving clause into the new enactment." Similarly, in *United States* v. *Barr,* 24 F. Cas. 1016, 1017 (No. 14,527) (D.C.D. Ore. 1877), the court characterized a general saving statute as a salutary provision to prevent "many a lame and impotent conclusion in criminal cases, in which the defendant escaped punishment because the legislature, in the hurry and confusion of amending and enacting statutes, had forgotten to insert a clause to save offenses and liabilities already committed or incurred from the effect of express or implied repeals."

*People* v. *McNulty, supra,* involved a factual situation similar to the instant case. There, after the defendant was convicted of murder in the first degree and sentenced to death, the legislature amended the statute relating to death penalty, without providing a saving clause whereby past offenses might be punished under the law as it stood at the time of their commission. The amendatory act was ex post facto as to past offenders under the decision in *Ex parte Medley, supra.* The court held that the general saving statute applied and that the defendant was punishable under

the law as it existed at the time of commission of the crime of which he was convicted.

Thus, the determination of the minimum term in this case will be governed by the provisions of § 258-52 in effect at the time appellant committed the crime.

Affirmed.

*Robert B. Bunn* (*J. Russell Cades* with him on the briefs, *Smith, Wild, Beebe & Cades* of counsel) for appellant.

*Richard T. Ishida,* Deputy Prosecuting Attorney (*John H. Peters,* Prosecuting Attorney, with him on the briefs) for appellee.

*Nobuki Kamida,* Deputy Attorney General (*Bert T. Kobayashi,* Attorney General, with him on the briefs) for appellee, appeared but did not argue.

---

### DISSENTING OPINION OF MIZUHA, J.
### WITH WHOM ABE, J., JOINS.

Section 291-7, R.L.H. 1955, defines manslaughter as follows:

"Whoever kills a human being without malice afore-thought, and without authority, justification or extenuation by law, is guilty of the offense of manslaughter."

In 1940, in *Territory* v. *Yoshimura,* 35 Haw. 324, at 328, this court said:

"Express intent is not an essential in the crime of man-slaughter. Negligence and reckless indifference to the lives and safety of others supply the intent for the purpose of the criminal law. Manslaughter may not only be committed while doing an unlawful act but may occur in the doing of a lawful act in a grossly negligent manner. (*People* v. *Campbell,* 237 Mich. 424, 212 N.W. 97.) "

This court then required negligence and reckless indifference, the sum of which amount to gross negligence for manslaughter.

In 1941, the legislature passed § 291-10, the negligent homicide statute, which reads:

"Every person who by the operation of any vehicle in a careless, reckless or negligent manner, but not wilfully or wantonly, causes the death of another, shall be guilty of the crime of negligent homicide * * *."

This statute was taken almost verbatim from the vehicular negligent homicide statute of Michigan which was the first jurisdiction to adopt such a statute in 1921. In 1927, the Supreme Court of Michigan construed the statute relied upon in *Territory* v. *Yoshimura, supra,* in *People* v. *Campbell,* 237 Mich. 424, 212 N.W. 97 at 99:

"By the enactment of this statute, the Legislature of 1921 obviously intended to create a lesser offense than involuntary manslaughter or common-law negligent homicide, where the negligent killing was caused by the operation of a vehicle. To do this it eliminated as necessary elements of the lesser offense negligence classed as wanton or willful. *Included in these terms is gross negligence.* So that, in the enactment of the statute, there was expressly eliminated as elements of the crime all negligence of such character as to evidence a criminal intent; and, as we have before pointed out, wanton or willful or gross negligence was of that character. Therefore this statute was intended to apply only to cases where the negligence is of a lesser degree than gross negligence." [Emphasis added.]

In *State* v. *Tamanaha,* 46 Haw. 245, at 249, 377 P.2d 688 at 691, this court stated:

"It is significant that in the 1941 legislative session the territorial legislature, while enacting the negligent homicide statute, which specifically excludes the concepts of wilfullness or wantonness and ties the word 'reckless' in with the terms 'careless' and 'negligent,' at the same time amended what is now R.L.H. 1955, § 311-1 by substituting the word 'carelessly' in place of the term 'furiously.'

"This would seem to indicate a legislative intent to make ordinary negligence the standard of conduct under both the negligent homicide and the 'careless and heedless' driving

statutes. The word 'furiously' is certainly more indicatory of wilful and wanton conduct than the term 'carelessly' which negates such notion."

This court defined "recklessness" as

"* * * 'recklessness' is more than 'negligence' and generally implies lack of care coupled with disregard for consequences, and conduct which is more than negligent may be reckless without being wilful or wanton. *Skalla* v. *Daeges,* 234 Iowa 1260, 15 N.W.2d 638, 642. Or, as aptly stated in *La Marra* v. *Adam,* 164 Pa. Super. 268, 63 A.2d 497, 501: "Recklessness implies conscious appreciation of the probable extent of danger or risk incident to contemplated action, while negligence in the legal sense implies knowledge only of a probable source of danger in the act." Lloyd v. Noakes, 96 Pa. Super. 164, 168.'" *State* v. *Tamanaha, supra,* 46 Haw. 245, at 248, 377 P.2d 688 at 690-691.

This court rejected the contention that "reckless" means "gross negligence," and concluded that by tying the word "reckless" to the words "careless and negligent" in the negligent homicide statute, the legislature made ordinary negligence as the standard of care.

By Act 48, S.L.H. 1964, the legislature amended Section 291-10. The urgency statement sets out reasons for its enactment:

"At present the crime of negligent homicide is treated as a felony with the penalty of imprisonment at hard labor for not more than five years. This is a harsh penalty for a person who through simple negligence causes death. Further, this penalty has not proven to be a significant deterrent to careless, reckless or negligent driving. The remedy to this problem is to treat negligent homicide due to gross negligence as a felony and negligent homicide due to simple negligence as a misdemeanor. * * *"

A careful reading of this urgency statement would indicate that the legislature was aware of the fact that the existing negligent homicide statute § 291-10, providing for a penalty of imprisonment at hard labor for not more than five years was too

harsh a penalty for a person who through *simple negligence* causes death (emphasis added). It felt that this harsh provision in the negligent homicide statute had not proven to be a significant detriment to careless, reckless or negligent driving. Hence, the desire of the legislature to treat negligent homicide due to gross negligence as a felony, and negligent homicide due to simple negligence as a misdemeanor.

From the foregoing, it is apparent that Act 48, S.L.H. 1964, is ex post facto in its retroactive application to defendant, and her conviction is void. Under § 291-10 prior to the amendment, defendant could only have been found guilty of negligent homicide for simple negligence. At worst, her conduct could be termed "reckless," but with the limitation placed on such conduct in *State* v. *Tamanaha, supra,* and equated with the terms "careless" and "negligent." Defendant is now convicted of a crime of negligent homicide in the first degree, conduct specifically termed in the statute as "grossly negligent," the standard of conduct which was previously necessary to sustain a conviction for manslaughter.

This definitely increases the public disgrace, opprobrium and ignominy attendant to defendant's conviction of the crime of negligent homicide. As stated in *Calder* v. *Bull,* 3 U.S. (3 Dallas) 386, 390, "Every law that aggravates a crime, or makes it greater than it was, when committed," is ex post facto, and therefore void. Previous to the enactment of Act 48, S.L.H. 1964, anyone convicted of the violation of § 291-10 was guilty of negligent homicide based on simple negligence as defined by this court in *State* v. *Tamanaha, supra.* Defendant now stands convicted of the violation of § 291-10 as amended, and her guilt of the crime of negligent homicide is based on gross negligence. Act 48, S.L.H. 1964, as applied to defendant by definition, aggravated the crime she committed, and made it greater than it was, when committed.

I would reverse.