# IN THE MATTER OF JOHN ATCHERLEY, AN ALLEGED INSANE PERSON.

## RESERVED QUESTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED AUGUST 10, 11, 1909.          DECIDED AUGUST 20, 1909.

## WILDER AND PERRY, JJ., AND CIRCUIT JUDGE WHITNEY IN PLACE OF HARTWELL, C.J.

APPEAL AND ERROR—*appeals in insanity cases.*
> Since the enactment of Act 149 of the Laws of 1909 no appeal lies to a circuit court from the decision of a district magistrate adjudging a person to be insane.

CONSTITUTIONAL LAW—*creation of board of commissioners of insanity.*
> The provisions of Act 149 creating a board of commissioners of insanity are not in violation of Sec. 81 of the Organic Act.

INSANE PERSONS—*due process of law.*
> The procedure prescribed by Act 149 relating to the examination and committal of persons alleged to be insane secures to such

persons due process of law within the meaning of the constitutional requirements on the subject.

CONSTITUTIONAL LAW—*validity of Act 149 of 1909.*

Assuming that sections 10 and 14 are unconstitutional, the remainder of the act is not for that reason invalid.

OPINION OF THE COURT BY PERRY, J.

On July 20, 1909, the district magistrate of Honolulu, after trial, found that Dr. John Atcherley, hereinafter named the petitioner, was insane and that the public safety required his restraint until he should become of sound mind, and made an order committing the petitioner to the Insane Asylum in Honolulu, Oahu, there to remain until he should become of sound mind° or be discharged according to law. From that judgment petitioner appealed to the circuit court of the first judicial circuit of this Territory, demanding a trial by jury. Upon a motion by the petitioner that the cause be set for trial and a motion by the Territory and the County that the appeal be dismissed on the ground of lack of jurisdiction, the circuit court reserved for the consideration of this court the following questions:

"First. Has the circuit court power and is it its duty to set down for trial before a jury the matters and things at issue upon said appeal taken from said decision, judgment and order of commitment of said district magistrate?"

"Second. Has the circuit court jurisdiction under the law of the appeal from a decision, judgment and order of commitment made by a district magistrate finding a person to be insane and that the public safety requires his restraint, and committing him to the Insane Asylum of Honolulu, City and County of Honolulu, Territory of Hawaii, until such person becomes sane or is discharged according to law?"

The petitioner claims (1) that Act 149, approved April 28, 1909, does not repeal the statutory provisions in force just prior to its enactment granting, as held in the case of *In re Atcherley,* 19 Haw. 346, an appeal from the decision of the

district magistrate to the circuit court; (2) that the provisions of Act 149, attempting to create a board of commissioners to hear and determine insanity proceedings, are invalid because contrary to Sec. 81 of the Organic Act; and (3) that Act 149 is unconstitutional (a) because it does not secure to an alleged insane person due process of law as a prerequisite to a committal to the asylum, and (b) because it authorizes detention of an inmate after he has become sane and without permitting him due process of law to ascertain whether or not he has become of sound mind.

(1) It is true that Act 149 does not in terms repeal or declare inapplicable the statutes which in 19 Haw. 346 were held to give an alleged insane person the right of appeal to the circuit court; but by necessary implication the act contains such repeal or declaration. Upon its face the act shows that it was clearly intended to make complete provision in the matter of committal and discharge of persons to and from the asylum. It is entitled "An Act to Provide for the Examination, Detention, Custody and Care of Insane Persons and for the Appointment of Commissioners to Examine Such Insane Persons, and Defining Their Duties, and to Repeal Sections 1116, 1117, 1118 and 1119 of the Revised Laws of Hawaii." The four sections last named contain the only provisions in force prior to the enactment of Act 149 relating to such committals and discharge, save only as to the right of appeal. The act itself provides that upon complaint by certain described persons any person believed to be insane may be arrested and taken before a district magistrate or a circuit judge and thereupon it shall be the duty of the magistrate or judge to examine into the question of the sanity of the arrested person, and that if the judgment be that the person is insane and that it would be unsafe to allow him to be at large the magistrate or judge shall issue a commitment directing the superintendent of the asylum to detain the patient until he becomes sane or is dis-

charged as in the act provided. The act then specifically declares that the alleged insane person may appeal to certain commissioners of insanity, whose appointment is likewise provided for, by complying with certain stated formalities. It is made the duty of the commissioners, among other things, to hear and determine all insanity cases brought before them on appeal. Following the ordinary rule in matters of construction the enumeration of the one right of appeal must be regarded as showing an intention to exclude any other right of appeal. Moreover, the act in Sec. 14 specifically provides that "no person shall be committed to the Insane Asylum or be discharged therefrom except as herein provided." To permit an appeal to the circuit court would be to permit committals and discharges by that court. The language of the act leaves no room for the supposition that the legislature intended to leave it optional with the alleged insane person to appeal either to the circuit court or to the commissioners of insanity, but on the contrary negatives any such intention. It is worthy of note, too, that the enactment of this statute came almost immediately after the decision in 19 Haw. 346, the latter having been rendered in February, 1909. In that case for the first time, as far as we· know, in the history of Hawaii, the right of appeal to an ordinary jury in an insanity case had been claimed and enforced. The inference would seem to be that the legislature took the view that such a jury of laymen was ill qualified to hear and determine the question of whether or not a person is of sound mind and therefore substituted a new procedure, which in its opinion would be better adapted to the nature of the case.

(2) Sec. 81 of the Organic Act provides "that the judicial power of the Territory shall be vested in one supreme court, circuit courts and in such inferior courts as the legislature may from time to time establish." The contention is that if the board of commissioners of insanity is a court at all it is a

court of last resort and therefore not an inferior court and beyond the power of the legislature of Hawaii to create. It is also contended, however, by the petitioner that the board is not a court at all. If the latter be the correct view, there was certainly no violation of Sec. 81 in the creation of the board. On the other hand, if the board is a court, it is in our opinion an inferior court within the meaning of the term as used in that section. It is inferior in the sense that it is subject to control by the higher courts by prohibition and mandamus, and inferior also in the sense that it is a court of very limited jurisdiction. See 11 Cyc. 658, and *Bailey v. Winn,* 113 Mo. 155, 159. In so far as by the act the circuit court is deprived of jurisdiction in the matter the authority in the legislature to make such a change in our laws is specifically recognized in the same section of the Organic Act, which says, "And until the legislature shall otherwise provide, the laws of Hawaii heretofore in force concerning the several courts and their jurisdiction and procedure shall continue in force except as herein otherwise provided." See also 23 Opinions Attorney General, 539.

(3a) No definition of the words "due process of law," appearing in the fifth and fourteenth amendments to the constitution, such as can apply in all cases, has been attempted by courts or text writers. Courts have merely determined with reference to the particular case under consideration whether or not the procedure followed secured to the parties interested due process of law. Its essential elements, all recognize, are notice and an opportunity to be heard. See, for example, *In re Atcherley,* 19 Haw. 346, 349. It contemplates an orderly proceeding, provided by law, adapted to the nature of the case and operating on all alike. See *Garvin v. Daussman,* 114 Ind. 429, 433; *State Ex Rel. v. Billings,* 55 Minn. 467, 474, 475; *Ex Parte Wall,* 107 U. S. 265, 289. The hearing required by the act to be had before the magistrate complies with all

requirements. Notice to the alleged insane person is provided
for and "a full hearing, at which the alleged insane person
shall have the right to be heard personally or by counsel and
to produce witnesses on his or her own behalf" is required.
Nor is it now contended that the prescribed proceedings before
the magistrate lack any of the essentials of due process of law.
What is contended is that since the act permits an appael by
the alleged insane person to the board of commissioners the
procedure before the latter must in turn be such as to meet
all of these requirements or otherwise the act is unconstitutional.
The weakness of this position is that due process of law does
not require more than one trial. The right of appeal is not
essential. *Reetz v. Michigan,* 188 U. S. 505, 508. The peti-
tioner cannot complain that the legislature in its anxiety to
make it impossible for a sane man to be committed to the
asylum permits him a second trial, before the commissioners
of insanity, which the constitution does not guarantee him.
It is optional with him whether to exercise the right so con-
ferred or to omit to do so. If he exercises it, he takes it as it
is given to him. We are not to be understood, however, as
in any way intimating that the trial provided for before the
commissioners does not in itself fulfil all the requirements of
due process of law. The only objection made to it by the peti-
tioner is that the commissioners are not given the power to
compel the attendance of witnesses or to administer oaths. It
may be that by a proper construction of the act such power
must be held to be conferred by implication, or it may be that
the procedure provided, notwithstanding the omission of such
power, is sufficient and valid. Upon these questions we ex-
press no opinion.

The petitioner further contends that due process in the mat-
ter of the committal to the asylum is denied him in that a trial
by jury is not permitted. The constitutional provision under
consideration, however, does not of itself require continued

adherence to that method of trial, if such was the sole procedure at the time of the adoption of the constitution. Other provisions of the constitution secure such a trial in certain classes of cases, but this case is admittedly not within any of those classes. The law is to a certain extent a progressive science. *Holden v. Hardy,* 169 U. S. 366, 385. Methods of trial and procedure may be, without necessarily conflicting with the constitutional provision under consideration, altered from time to time as experience may demonstrate to be desirable. *Hurtado v. California,* 110 U. S. 516, 537; *Holden v. Hardy,* supra; *Reetz v. Michigan,* supra. It may be that originally in England questions of insanity were tried by a jury called for the purpose by the chancellor and it may also be that in some jurisidctions in the United States trials by jury in such cases are required by statute, but the constitutional provision does not prohibit the abandonment of that procedure and the substitution of a trial before a board of experts or before a district magistrate or circuit judge alone.

(3b) The specific objection, and the only objection in this connection, is that Sec. 10 of Act 149, read in connection with Sec. 14, prohibits an application by an inmate, who has become sane, for a hearing to determine the question of his sanity. Sec. 10 reads: "Any person committed to the Insane Asylum may upon application being made by a sheriff, deputy sheriff or by a relative of such person, and notice given to the Superintendent of the Insane Asylum, be examined by the Commissioners as to his or her sanity and if a majority of said Commissioners shall be satisfied that such person is of sound mind or is not dangerous to the public safety, they shall so certify to the Superintendent of the Asylum, and such person shall be forthwith released from custody," and Sec. 14: "No person shall be committed to the Insane Asylum or be discharged therefrom except as herein provided." The petitioner is admittedly not a person within the class referred to in Sec.

10.  He is as yet merely resisting the effort to have him committed.  It may be, therefore, that the ruling made in *Territory v. Miguel,* 18 Haw. 402, 404, that constitutional questions raised by persons not affected by the alleged unconstitutionality are not to be considered, applies and renders it unnecessary to consider this particular attack on the constitutionality of the act.  See also *Hatch v. Reardon,* 204 U. S. 160.  It may also be, as contended on behalf of the Territory and of the County, that the act, properly construed, permits the superintendent of the asylum to discharge persons who have become sane (Sec. 4 provides that the committal shall be *"until he* or she *shall become sane or* shall be discharged as in this act provided"), and contemplates that upon refusal of the superintendent to discharge under those circumstances the question of the restoration to sanity may be judicially tried upon a writ of habeas corpus.  Again, it may be that if any part of the act is unconstitutional it is merely that portion of Sec. 14 which provides that no person shall be discharged from the asylum except as in the act provided, in which event Sec. 10, not being in its terms exclusive, would still be operative and would stand with the remainder of the act, resort to habeas corpus being then clearly possible on the part of an inmate on whose behalf no application had been made by any relative, sheriff or deputy sheriff.

Upon none of these questions, however, do we express any opinion, for even assuming that Secs. 10 and 14 are inseparable and unconstitutional, the remainder of the act should, in our opinion, be sustained.  It is, of course, elementary that a part of an act may be void and the other part valid.  A "statute may contain some such provisions," (invalid ones) "and yet the same act, having received the sanction of all branches of the legislature, being in the form of law, may contain other useful and salutary provisions, not oboxious to any just constitutional exception. It would be inconsistent with all just principles

of constitutional law to adjudge these enactments void because they are associated in the same act, but not connected with or dependent on others which are unconstitutional. Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other. * * * If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. * * * If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other." Cooley, Constitutional Limitations, 7 ed., pp. 246, 247. See also *Wellington et al, Petitioners,* 16 Pick. 87, 95, 96; *People v. Briggs,* 50 N. Y. 553, 565, 566, 567. The act under consideration covers two subjects, that of the committal of persons to the asylum and that of the discharge of those so committed. The provisions relating to the first subject, occupying the larger part of the act, are easily separable from Secs. 10 and 14, and are complete in themselves and capable of being executed in accordance with the apparent legislative intent. If Secs. 10 and 14 are void it is as though they had never been enacted and in that event the legality of a detention, continued after an alleged restoration of sanity, would be open to test by habeas corpus.

The reserved questions are answered in the negative.

*T. M. Harrison* for John Atcherley.

*Lorrin Andrews, Deputy Attorney General,* for the Territory, and *F. W. Milverton, Deputy County Attorney,* for the City and County of Honolulu (*C. R. Hemenway, Attorney General,* and *J. W. Cathcart, County Attorney,* with them on the brief).