# IN THE MATTER OF THE GUARDIANSHIP OF HATTIE KULAMANU WARD, AN INCOMPETENT.

## Nos. 2761 and 2762.

ARGUED JANUARY 10, 1951.　　　　DECIDED FEBRUARY 5, 1951.

LE BARON AND TOWSE, JJ., AND CIRCUIT JUDGE CORBETT IN PLACE OF KEMP, C. J., RETIRED.

40

OPINION OF THE COURT BY LE BARON, J.

This is a writ of error sued out jointly by Lucy K. Ward and Kathleen Ward as intervenors, and individually by Lucy K. Ward as next friend of their sister Hattie Kulamanu Ward. Consolidated with the writ in this court is an appeal by the said Lucy K. Ward as next friend of the said Hattie Kulamanu Ward. The writ stems from two sets of proceedings below. One set is that of original guardianship proceedings instituted by petition of Lani W. Booth and Mellie E. Hustace, also sisters of Hattie Kulamanu Ward, for the appointment of a guardian of her estate on the ground of incompetency on her part to manage such estate. The other is that of proceedings, subsequent to the appointment of the guardian in the original guardianship proceedings, instituted by motion of Lucy K. Ward as next friend to vacate the order of appointment or to remove such guardian. The appeal stems from the subsequent proceedings only.

The petition for appointment of a guardian in the original guardianship proceedings named Lucy K. Ward as attorney in fact of the alleged incompetent. Notice was served on the alleged incompetent on the filing of the petition. Thereafter an attorney at law was appointed for her as guardian *ad litem*. At a hearing before the probate judge at chambers without a jury, the alleged incompetent was not present, but represented by the guardian *ad litem*. Lucy K. Ward and Kathleen Ward as intervenors were not present but both were represented by respective attorneys. The petitioners appeared with their attorney. Evidence of insanity adduced at the hearing was undisputed and proved to the judge's satisfaction that Hattie Kulamanu Ward is

mentally incapable of managing her estate. On evidence of suitability the probate judge found that Hawaiian Trust Company, Limited, is "a fit and proper· person to be appointed" as guardian of her estate. After the hearing the probate judge entered an order appointing Hawaiian Trust Company, Limited, guardian of the incompetent's estate. Accordingly, letters of guardianship were issued to the guardian upon it giving an approved bond in the sum of $10,000, conditioned in accordance with law. Ever since so qualifying Hawaiian Trust Company, Limited, has been the legally constituted guardian of the incompetent's estate.

In the subsequent proceedings Lucy K. Ward, during the absence of the probate judge who had presided in the original guardianship proceedings, petitioned a different probate judge for the appointment of herself as next friend of the incompetent "for the purpose of representing her in a motion to vacate an order appointing Hawaiian Trust Company, Limited, Guardian of the Estate of Hattie Kulamanu Ward or to remove such guardian and for other relief necessary to protect the interests of said Hattie Kulamanu Ward and her estate and property." For such purposes that probate judge appointed Lucy K. Ward as next friend of the incompetent. Pursuant thereto, Lucy K. Ward in that capacity filed a motion to vacate the order appointing the guardian or to remove such guardian and to rehear the issues previously determined by such order as well as to protect the interests of the incompetent pending disposition of the motion. That motion contained two main prayers. One is for an order to compel the guardian and the petitioners in the original guardianship proceedings to show cause why the order appointing the guardian should not be vacated or, as an alternative, why the guardian should not be removed. The other is for a temporary restraining order without notice to prevent the guardian from voting stock of the incompetent pending disposition of the

motion to vacate or to remove. Upon reading the motion at the time of its filing, the judge who made the appointment of next friend granted those prayers and issued appropriate *ex parte* orders in accordance therewith. Before the day set therein to show cause, the guardian and petitioners filed a combined answer and return to the motion and order to show cause, which by way of answer to the motion denied the allegations thereof, and by way of return to the order pointed to the record of the original guardianship proceedings as good cause why the guardian should not be removed. On the day set, extensive arguments on both sides were heard by the probate judge who presided in the original guardianship proceedings. At the conclusion thereof the probate judge entered an order dissolving the *ex parte* order of restraint and denying the motion without a hearing on its merits. From this state of the record concerning these subsequent proceedings it is evident that the underlying relief, sought by the movant and denied by the probate judge, is to have previously determined issues reheard for the sole purpose of discharging the guardian from the trust originally imposed upon it.

The writ challenges the order appointing the guardian of the incompetent's estate and in conjunction with the appeal challenges the order dissolving the *ex parte* order of restraint and denying the motion to vacate that order or to remove such guardian without a hearing on its merits. Those orders are challenged in eleven assignments of error. But preliminary thereto, the appellants raise for the first time on appeal the constitutional question whether or not the provisions of section 12509 of Revised Laws of Hawaii 1945, on which the jurisdiction of the probate judge in the original guardianship proceedings below is based, contravenes the Seventh Amendment of the Constitution which declares "In suits at common law, where the value in con-

troversy shall exceed twenty dollars, the right to trial by jury shall be preserved."

The question in so far as it goes to the jurisdiction of the probate judge does not require any construction of section 12509, which in derogation of the common law clearly permits a probate judge in guardianship proceedings "after a full hearing" to adjudge an alleged incompetent to be insane and to appoint "a guardian of his person or estate or both" without the intervention of a jury. But it does require the Seventh Amendment to be interpreted as to the meaning of its clause "In suits at common law, where the value in controversy shall exceed twenty dollars" with respect to guardianship proceedings in insanity cases. The appellants concede that the Supreme Court of the United States has had no occasion to interpret, and has not interpreted, that clause with respect thereto nor have they cited any clear authority of a lower court to hold that guardianship proceedings in insanity cases constitute "suits at common law, where the value in controversy * * * exceed[s] twenty dollars" within the meaning of the Amendment and there are apparently none to be found even though such proceedings were known to the common law long before the Amendment was adopted in 1791. From such dearth of authority a serious doubt arises that guardianship proceedings in insanity cases constitute suits at common law in which there is any value in controversy within the meaning of the Amendment. That they are not such suits is strongly indicated by the fact that there is no value therein to be brought into controversy on determining whether or not an alleged incompetent be of unsound mind and incapable of managing his own affairs. Nor can it be argued with reason that such a controversy arises when a presiding judge inquires into the amount and character of the estate of an adjudged insane person for the purpose of appointing a suitable person to manage that estate as

guardian, or for the fixing of an appropriate bond, mere value of such estate not being in controversy as a subject of dispute in the cause itself for the appointment of a guardian.

Consistent with the common origin of the power of the lord chancellor as the keeper of the king's conscience to act in lieu of the king as general guardian of all infants, idiots and lunatics and of the equitable jurisdiction of courts of chancery, which grew out of the ancient practice of petitioning the king, as the fountain of justice, for relief in those particular cases where the positive law, *lex scripta,* was deficient, guardianship proceedings in insanity cases before a probate judge as the successor to the lord chancellor have much in common with the civil causes in courts of equity as the successors to the courts of chancery. Although such proceedings differ generally from such causes, the particular difference to be noted for the purposes of this opinion lies in the fact that in civil causes in courts of equity the value is in controversy. Nevertheless, the two are akin in other essential characteristics. Illustrative thereof, guardianship proceedings in insanity cases are special proceedings, equitable in nature, and at common law called for a verdict of a special jury of inquiry on the issue of insanity which was merely advisory for the purpose of informing the conscience of the chancellor. (See *Barbo* v. *Rider, Guardian, Etc.,* 67 Wis., 598, 607; *In re Slade,* 43 N. Y. S. [2d] 281; *Sporza* v. *German Savings Bank,* 192 N. Y. 8, 84 N. E. 406; *Matter of Wendell, a Lunatic,* 1 Johns. Ch. 599; *Matter of Tracy,* 1 Paige 580.) This is evident from the character of the common-law writs of *de idiota inquirendo* and *de lunatico inquirendo* and those in the nature of *de lunatico* in issuing out of chancery on the exercise of the special jurisdiction conferred by the king's "sign manual" to the lord chancellor as the personal representative of the crown. (See *Hamilton* v. *Traber,* 78

Md. 26, 27 Atl. 229; *Barbo* v. *Rider, Guardian, Etc., supra;* 1 Bl. Comm. 303, 305; 3 Bl. Comm. 427; J. G. Woerner's *American Law of Guardianship* 402, § 122.) On the other hand, a special jury of inquiry in extraordinary cases is impanelled in civil causes in courts of equity to inform the court's conscience similar to the situation in guardianship proceedings in insanity cases at common law. But the power of an equity court to do so is not regarded by the Supreme Court of the United States as "equivalent to the right of trial by jury secured by the Seventh Amendment" (*Cates* v. *Allen,* 149 U. S. 451, 459; see *Whitehead* v. *Shattuck,* 138 U. S. 146, 151.) Nor is it reasonable to suppose that the framers of the Amendment regarded an advisory jury at probate or in equity as equivalent to a binding jury at law. On the contrary, it is reasonable to assume that they had in mind the distinction between such diverse kinds of jury and used the word "jury" advisedly to denote a binding jury such as prevailed at common law in civil actions in courts of law. Clearly the Supreme Court did not deem that the term "suits at common law" within the meaning of the Amendment applied to civil causes in courts of equity or to other proceedings calling for advisory juries at common law when it declared that "By common law, they [the framers of the Amendment] meant what the Constitution denominated in the third article 'law'; not merely suits which the common law recognized among its old and settled proceedings." (*Parsons* v. *Bedford et al.,* 3 Pet. 433, 446.) There are stronger reasons to say that the Amendment itself does not apply to guardianship proceedings in insanity cases than those making it inapplicable to civil causes in courts of equity, not only because the equitable nature of those proceedings and the advisory effect of the verdict in them at common law render them comparable to the character of those civil causes and to the effect of a verdict in them, but because such proceedings for the appointment

of a guardian involve no value in controversy as do such civil causes. Those reasons impel this court to interpret the Amendment as excluding guardianship proceedings in insanity cases as well as civil causes in courts of equity from its operation. It follows therefrom that section 12509, even though in derogation of the common law, does not contravene that inapplicable amendment of the Constitution. Perforce, the probate judge had jurisdiction and the constitutional question as preliminarily presented must be answered in the negative.

The eleven assignments of error present four questions of law. The first two questions arise only under the writ of error as presented by the first six assignments. This court will now deal with those two questions. They pertain to alleged errors or alleged abuses of discretion occurring in the original guardianship proceedings either at the hearing on the petition for appointment of a guardian or in the appointment of the guardian. But the questions themselves were not presented for the consideration of the probate judge in those proceedings on either occasion, nor were the alleged errors or abuses called to his attention or made the subjects of objection and exception at the time they were purportedly committed. The general rule is that an appellate court will consider only such questions as were raised and properly preserved in the lower court. (For collection of authorities see 3 Am. Jur. 25, § 246, n. 15.) That rule applies to these particular questions unless this court is of the opinion that any of the alleged errors or alleged abuses patently appear on the record as a manifest error injuriously affecting substantial rights of the appellants on writ of error within the meaning of section 9564 of Revised Laws of Hawaii 1945. (See *Territory* v. *Chong,* 36 Haw. 537; *City and County* v. *Tam See,* 38 Haw. 592, 602; *Wayne* v. *New York Life Ins. Co.,* 132 F. [2d] 28; *In re Florsheim,* 24 Fed. Supp. 991; *Taylor* v. *Catalon,*

140 Tex. 38, 166 S. W. [2d] 102.) But this court is not of that opinion and finds no ground of reversal. On the contrary, it finds on reviewing the record of the original guardianship proceedings that the hearing on the petition and the appointment of the guardian were held and made, respectively, in strict conformity with the provisions of section 12509 and constituted due process of law under the Fifth Amendment. (See *In re Acherly,* 19 Haw. 535.) This court therefore will not further consider those first two questions or the writ of error in so far as the first six assignments of error are concerned even though it may have the power to do so.

There remains to be considered the last two questions of law, which are kindred and arise under both the writ and appeal as presented by the last five assignments of error. They pertain to the proceedings taken subsequently to the original guardianship proceedings. For convenience, these questions will be stated and considered separately in logical sequence. The first is stated by the appellants in the opening brief to be whether or not it was "error as a matter of law, or an abuse of discretion, to deny appellant [movant] a hearing on the merits of the motion to remove Hawaiian Trust Company, Limited, as the guardian of her estate on the ground that such guardian is unsuitable" as presented by the seventh, eighth, ninth and tenth assignments of error. In oral argument, however, the appellants divided that question into two component parts consonant to the alternative character of the motion to vacate or to remove. In doing so, the question becomes a dual one, *i. e.,* a question of "error as a matter of law" in denying a hearing on the merits of the motion as one to remove the guardian for statutory cause and a question of "an abuse of discretion" in denying a hearing on the merits of the motion as one to vacate the order appointing such guardian. For convenience, the question will be so treated in this opinion and

regarded as two distinct questions. The question of error will be first considered and then that of abuse.

In the subsequent proceedings consistently with the theory thereof, the parties at the hearing on the order to show cause argued the issue of the sufficiency of the motion's allegations to state the statutory cause for removal whereupon the probate judge in resolving that issue in the negative denied the motion without a hearing on its merits. The question of error pertains to such action on the part of the probate judge. Its answer depends on whether the allegations of the motion, if taken to be true on demurrer, are sufficient or insufficient to set forth the statutory cause for removal. Admittedly the test is to be found in the provisions of section 12529, chapter 305, Revised Laws of Hawaii 1945, as applied to the facts alleged in the motion. Those provisions, therefore, must be considered in the light of such facts.

The pertinent part of section 12529 reads: "Where any guardian, appointed either by a testator or by any of the judges hereinbefore mentioned, shall become insane or otherwise incapable of discharging his trust, or unsuitable therefor, * * * any of the judges * * * may remove him * * *." This sentence may be paraphrased without destroying the ordinary meaning of its words and within the plain legislative intent of the section to read: "Any judge, having jurisdiction over guardians under chapter 305, may remove a duly appointed guardian whenever it shall come to pass after his appointment that he has arrived at such a state of mental deficiency or other incompetence or of unfitness that his further acting as a guardian is incompatible with a proper carrying out of the trust originally imposed upon him." Such paraphrase merely serves to illustrate in different language the meaning of the statute itself. Nevertheless, that meaning is clear from the language employed in the statute. By its terms, the statute presupposes the

guardian to have been fully competent, capable and fit to perform his trust duties at the time of his appointment, but contemplates that he may not continue to be so thereafter and to meet that contingency specifies in the alternative a particular cause for removal at a future time. Operating as it does in futurity from the time of appointment, the statute thereafter gives to certain judges a purely discretionary authority, exercisable only in case a duly appointed guardian can no longer properly function as a guardian or ceases to be an appropriate guardian. Until the event of such transition, no judge has any authority to remove a guardian or any basis of right on which to exercise judicial discretion therefor. Thus the granting of authority to remove a guardian as well as the exercise of discretion thereunder is effective after the appointment of the guardian and in the event that he becomes insane or otherwise incapable of, or unsuitable for, discharging his trust duties. This is the sole alternative cause specified by the statute upon which he may be removed. Nor can he be removed except for that specific cause. (See *Estate of Atkins,* 121 Cal. App. 251, 8 P. [2d] 1052; *State ex rel. Baker* v. *Bird,* 253 Mo. 569, 162 S. W. 119. Also *Anderson's Committee* v. *Anderson's Admr.,* 161 Ky. 18, 170 S. W. 213.) As a corollary thereto, the statute from the nature of that cause permits no vicarious removal of the guardian through a reversal or vacation of the order appointing him and authorizes no retrial of the issues previously determined by that order.

The motion as one to remove the guardian for the statutory cause on the ground of unsuitability is patently not predicated on that cause. It does not purport to allege that the guardian since appointment has become either incapable of, or unsuitable for, discharging its trust duties within the meaning of the statute. Nor does it allege the necessary transition affecting the character of the guardian

to discharge its trust duties. On the contrary, the whole tenor of the motion relates back to the time of appointment. The motion alleges facts which either had been or could have been advanced at the hearing on the petition for the appointment of a guardian. It seeks in effect to remove the guardian by indirection through a reversal or vacation of the order appointing such guardian and proposes to accomplish that result by a retrial of the issues previously determined by such order. On its face, therefore, it is fatally defective in failing to allege the cause for removal specified by the statute and does not entitle the movant to a hearing on its merits as a matter of law. That patent insufficiency rendered it incumbent upon the probate judge either on demurrer or on his own motion to deny the movant's motion without a hearing on its merits, there being no alleged facts to be judged as merits of removal. Consequently, his disposition of the motion was proper and does not constitute an "error as a matter of law" as propounded by the question under consideration. Such being the case, this court answers that question in the negative.

Next to be considered is the question of an abuse of discretion in denying a hearing on the merits of the motion as one to vacate the order appointing the guardian. Both parties concede that it is a matter within the sound judicial discretion of the probate judge to grant or deny such a hearing where, as here, that hearing would be nothing more than a rehearing of the issues previously determined by the order of appointment. Thus the propriety of denying the hearing or rehearing as an exercise of that discretion must be tested by the record. The denial thereof was made after the probate judge had been fully advised by the argument of the parties. It was made by the probate judge who had presided in the original guardianship proceedings and in the light of the motion's allegations, the character of which being more conclusionary than factual. Upon that record,

he deemed that no useful purpose would be served by a hearing on the motion's merits or by a rehearing of the previously determined issues. Nor is this court in a better position to say otherwise, or to declare as a matter of law that he abused his discretion in disposing of the motion as he did. It follows therefrom that there is no manifest abuse of discretion appearing on the record to justify this court in disturbing the probate judge's exercise of discretion or to entitle the movant to a hearing or rehearing as a matter of law. Consequently, the question of abuse to the same extent as that of error is answered in the negative. The seventh, eighth, ninth and tenth assignments of error, presenting those questions as a dual question, are therefore found to be without merit.

The second and final question of law remaining to be stated and considered is presented by the eleventh assignment of error. It is whether or not the probate judge in making certain observations upon the motives of the movant and the manner of presentation on the part of her attorney while that attorney was arguing the sufficiency of the motion, not only to allege the statutory cause for removal but to warrant a vacation of the order of appointment through a rehearing of previously determined issues, manifested such "bias and prejudice * * * against appellant [movant]" that she was "denied a full and fair hearing and deprived of due process of law." This question is directed at the denial of that motion without a hearing on its merits, the full hearing and due process of law previously afforded in the original guardianship proceedings not being affected by that which may have transpired in subsequent proceedings. Nor does due process of law require a rehearing or more than one trial. (See *In re Acherly,* 19 Haw. 535.) The complete answer in the negative to the question, so directed, has already been effectively given by this court in finding that the movant as a matter of law was not en-

titled to a hearing on the merits of her motion as to either the remedy of removal or that of vacation. Consequently, there is no need to decide as a matter of fact whether the probate judge's observations be warranted on the record, or so unwarranted thereon that they manifested bias and prejudice against the movant and her attorney, the actual disposition of the motion itself having been properly made. Suffice it to say that the movant was not only allowed the fullest opportunity permissible in which to argue the sufficiency of her motion before the probate judge, but afforded thereby judicial process in the regular course of administration of justice which more than met the requirements of due process of law. The final question, therefore, is answered in the negative and the assignment presenting it found to be devoid of merit.

Orders affirmed.

*Harriet Bouslog* (*Bouslog & Symonds* on the briefs) for appellant and plaintiff in error.

*J. G. Anthony* (*Robertson, Castle & Anthony* on the briefs) for appellees and defendants in error.